IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LAWRENCE A. BLACKWELL and RANDYL H. BLACKWELL, individually, and on behalf of their minor children,<br><br>Plaintiffs,<br><br>vs.<br><br>SUSAN ANN LaFRINIERE,<br><br>Defendant. | CV 16–22–M–DWM<br><br>ORDER |

The plaintiffs seek to amend the Scheduling Order and file an amended complaint two months after the deadline to do so has passed. (Doc. 29.) While the defendant opposes the request, this is the unusual case where belated amendment is appropriate. The plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs Lawrence H. Blackwell ("Lawrence") and Randyl H. Blackwell ("Randee") filed a complaint against Defendant Susan LaFriniere ("LaFriniere") on February 10, 2016, alleging LaFriniere, their neighbor, discriminated against them in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1982), the Fair

Housing Act (42 U.S.C. §§ 3604, 2617), and the Montana Human Rights Act (Mont. Code Ann. § 49-2-305). (Doc. 1.) The Complaint details LaFriniere's racially-motivated harassment of Lawrence, a black man, and the Blackwells, a mixed-race family, since September 2013, including incidents of physical assault and the use of racial epithets. (*Id.* at ¶ 8.) It also notes that on February 4, 2016, LaFriniere was convicted in state court of committing a "racially motivated assault upon [Lawrence] and of the crime of violating a restraining order issued by a state court against her and in favor of the Blackwells." (*Id.* at ¶ 9.) The Complaint concludes that Lafriniere's actions have deprived the Blackwells of equal housing rights, interfered with their exercise of fair housing rights, and caused them personal injury and emotional harm. (*Id.* at ¶¶ 10-11.) It requests compensatory and punitive damages, and that LaFriniere be enjoined from further harassment. (*Id.* at ¶¶ A-E.)

Both parties attended a preliminary pretrial conference on June 29, 2016. The resulting Scheduling Order set September 1, 2016 as the amended pleading deadline. (Doc. 19.) Lawrence was killed in an automobile accident on July 22, 2016. (Doc. 25.) Eliana Blackwell, age 11, was injured in the same crash and required hospitalization. (Doc. 29-2 at 4.) Randee was appointed personal representative of Lawrence's estate on September 23, 2016. (*Id.*) On November 2,

2016, the parties participated in an unsuccessful settlement conference. (Doc. 24.)

At the time of Lawrence's death, Randee was living and working in Spokane while Lawrence and the couples' children remained in Missoula. (Doc. 29-2 at ¶ 2.) She states she and her husband decided to move to Spokane because LaFriniere's actions made life at their Missoula residence untenable. (*Id.*) Before he died, Lawrence was also caring for Randee's elderly and infirm mother. (*Id.* at ¶ 4.) He had also handled all communications with the Blackwells' counsel in this case. (*Id.*) Lawrence's unexpected death placed all those responsibilities on Randee. On October 6, 2016, Randee's mother died as well. (*Id.*)

Randee states that "[a]s a result of [her] husband's death . . . [she] was not available to consult on an informed basis with [counsel] until mid-October 2016, and [was] only been able to leave a brief voice mail message for [counsel] sometime in August informing him of Larry's death." (*Id.* at ¶ 6.) It was not until late October and early November that she located "documents [and] papers . . . necessary to discuss this case." (*Id.* at ¶ 7.) These included audio recordings from a hearing concerning an order of protection against LaFriniere, records of communications with the property management company, and records Lawrence kept of incidents involving LaFriniere. (*Id.*) Randee states she was not able to speak at length with counsel until sometime in mid-October, and not in person until

November 1 and 2, 2016.  (*Id.* at ¶ 8.)

Counsel for the Blackwells avers that he and Lawrence made plans after the scheduling conference to meet sometime in early August 2016 to "obtain information and documents primarily for the purpose of pursuing early settlement efforts and determining whether the Complaint should be amended." (Doc. 29-3 at ¶ 5.)  Counsel states he tried, unsuccessfully, to contact Lawrence in late July and early August, and did not learn of Lawrence's death until August 22, 2016.  (*Id* at ¶ 7.)  He states that as a result of Lawnrence's death, and the ensuing confusion, information indicating the need to amend the Complaint was not available to him until late October and early November, when he was finally able to meet with Randee.  (*Id.* at ¶¶ 14, 15.)

On November 12, 2016, the Blackwells moved to amend the Scheduling Order and for leave to file an amended complaint.  The amended complaint would add as defendants (1) ADEA Property Management Company, the manager of the property owned by LaFriniere; (2) Licorne, LLC, the owner of the subdivision in which the subject property sits; and (3), Todd Mowbray, the predecessor owner of the subdivision and the owner and manager of Licorne, LLC. (Doc. 29-1 at ¶¶ 9-11.)  The amended complaint would also add four new counts: (1) Count IV: negligent inflection of emotional distress by LaFriniere; (2) Count V: violation of

the Fair Housing Act by ADEA, Licorne, and Mowbray; (3) Count VI: violation of the Montana Human Rights Act by ADEA, Licorne and Mowbray; and (4) Count VII: negligence by ADEA and Licorne.  (*Id.* at ¶¶ 36-52.)

## ANALYSIS

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides a liberal amendment policy, instructing that a court should freely give leave to amend "when justice so requires."  Under Rule 15(a)(2), "leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185-87 (9th. Cir. 1987)). However, once a district court enters a scheduling order pursuant to Rule 16, that rule's standards control.  *Johnson*, 975 F.2d at 607-08.  Therefore, a party seeking to amend a pleading after the date specified in the scheduling order must show "good cause" exists for amendment under Rule 16(b)(4) in addition to satisfying the Rule 15(a)(2) requirements.  *Id.* at 608.

## ANALYSIS

**I.     Rule 16**

Because the amendment deadline set by the Scheduling Order has passed,

the plaintiff must show "good cause" to qualify for amendment. (*See* Doc. 19 at ¶ 1 (setting Amendment Deadline of September 1, 2016)). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson,* 975 F.2d at 609. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* This is the unusual case in which that standard is met.

Randee and plaintiffs' counsel acted diligently both before and after Lawrence's unexpected death. Lawrence had made plans with counsel to meet following the scheduling conference to strategize about the case and the potential joinder of other parties. (Doc. 29-3 at ¶ 5.) His death made that meeting impossible. Unaware of Lawrence's passing, counsel attempted to contact the Blackwells multiple times. (*Id.* at ¶ 7.) The declarations of Randee and counsel demonstrate diligent efforts to continue with the case despite the sudden disruption to the Blackwells' lives, which included two deaths and the hospitalization of a child. These events do not suggest carelessness. Good cause exists to amend the Scheduling Order.

## II. Rule 15

Having found good cause to amend, the next step is to evaluate the amended pleading pursuant to Rule 15(a)(2). Under Rule 15(a)(2), leave to amend should be granted unless amendment would prejudice the opposing party, is sought in bad faith, would create undue delay, or would be futile. *Johnson*, 975 F.2d at 607. Those factors are addressed in turn.

LaFriniere argues the addition of a count of negligent inflection of emotional distress will unduly prejudice her during litigation. (Doc. 32 at ¶ 21.) However, this new count is directly tied to the alleged racial discrimination at issue in the original complaint, and will not unreasonably complicate discovery. LaFriniere argues deposition costs will be prohibitive because she has limited funds; however, LaFriniere is being represented *pro bono* in this matter. (Doc. 32 at ¶ 3.) Any costs would therefore appear to be borne by her counsel. LaFriniere's argument also fails to take into account the likely necessity of depositions even if amendment is not granted. As to cost, the Federal Rules of Civil Procedure contemplate a number of inexpensive options for taking depositions, including audio, audiovisual, or stenographic means. (Fed. R. Civ. P. 30(b)(3)(A).) LaFriniere will not be unduly prejudiced by the addition of a negligent inflection of emotional distress count against her. If anything, the presence of additional defendants and

claims will likely have the greatest effect on the plaintiffs, and may even alleviate some of LaFriniere's defense costs.

LaFriniere argues amendment will create undue delay. (*Id.* at ¶ 21.) Admittedly, amendment will likely slow the course of these proceedings, as the addition of three new defendants will require the schedule set forth in the Scheduling Order be amended to allow for discovery. However, this delay is not sufficient to override Rule 15(a)(2)'s directive that leave to amend be freely given "when justice so requires."

Next, the facts do not indicate that plaintiffs have acted in bad faith or with dilatory motive. Counsel and Lawrence planned to meet following the Scheduling Conference. (Doc. 33 at 5.) One purpose of the meeting was to discuss potential amendments to the pleadings. (*Id.*) Lawrence's death prevented that meeting and disrupted contact between counsel and Randee for several months. ( *Id.*) Bad faith was not a factor.

Finally, futility of amendment is the most heavily weighted of the concerns implicated under Rule 15(a)(2), and can by itself foreclose amendment. *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001). However, LaFriniere does not argue amendment would be futile. Nor is there any indication that the additional count involving LaFriniere, nor those brought against

the additional defendants, would be futile.  Accordingly,

IT IS ORDERED THAT the plaintiffs' motion to amend (Doc. 29) is GRANTED.  The plaintiffs have twenty (20) days from the date of this Order to file and serve the amended complaint.

IT IS FURTHER ORDERED that all remaining dates in the Scheduling Order (Doc. 19) are VACATED.   A new Preliminary Pretrial Order will be filed separately.  The plaintiffs shall serve it upon all defendants within twenty (20) days of this Order as well.

DATED this 30 day of January, 2017.

_____
Donald W. Molloy, District Judge
United States District Court